IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATEO WALTER CORIO-SANCHEZ, Petitioner, vs. MARKWAYNE MULLIN, in their official capacity as Secretary of the United States Department of Homeland Security; TODD BLANCHE, in their official capacity as Acting Attorney General of the United States; TODD M. LYONS, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; DAVID EASTERWOOD, in their official capacity as Acting St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; and CAROLYN SOMMER, in their official capacity as Acting Warden, McCook Detention Center, Respondents. | **4:26CV3173** **MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Mateo Walter Corio-Sanchez, a citizen of Guatemala who entered the United States more than five years ago as an unaccompanied child (UAC) and was released to a relative, brought this action for habeas corpus relief pursuant to 28 U.S.C. § 2241. Filing 1 at 1–2 (¶¶ 1–3), 5 (¶ 18). He challenges his redetention in January 2026 for removal without notice or opportunity to be heard. Filing 1 at 2 (¶ 5). Corio-Sanchez asserts a single claim for relief alleging violation of substantive and procedural due process guaranteed by the Fifth Amendment of the United States Constitution. Filing 1 at 17–19 (¶¶ 67–77). For the reasons stated below, Corio-Sanchez's Petition for Writ of Habeas Corpus is denied.

1

## I.  INTRODUCTION

As in some other habeas cases brought by aliens challenging their detention, the Court begins with a summary of the procedural background rather than a summary of the factual background. This course is appropriate because the Court finds that the procedural background brings the key issues—which are legal—most sharply into focus.

### A.  Procedural Background

#### 1.  The Petition

In his Petition filed June 12, 2026, Corio-Sanchez alleges, "Respondents' re-detention of Petitioner ignores the liberty interest he maintains in his release which was granted in 2019, violates the plain language of the Immigration and Nationality Act ('INA'), the Trafficking Victims Protection Reauthorization Act of 2009 ('TVPRA'), the implementing regulations of those laws, and Petitioner's due process rights under the United States Constitution." Filing 1 at 3 (¶ 7). "As such, [he] seeks a writ of habeas corpus finding that he was unlawfully re-detained and requiring his immediate release." Filing 1 at 3 (¶ 8).

Notwithstanding that Corio-Sanchez alleges generally violations of various statutes, regulations, and the Constitution, his sole claim for relief is entitled "Violation of the Fifth Amendment of the U.S. Constitution: Substantive and Procedural Due Process." Filing 1 at 17 (Count I). In that claim, Corio-Sanchez alleges, "[I]t is the fact that the government placed an individual into immigration detention and the government's subsequent release of the individual from detention that results in a liberty interest warranting due process prior to revoking or restricting that liberty interest." Filing 1 at 17 (¶ 68). He alleges further, "There is no question that Petitioner was detained and then released from immigration detention in 2019. He has thereby accrued a liberty interest in remaining free from detention." Filing 1 at 17 (¶ 70) (internal citation omitted). Corio-Sanchez then alleges,

2

72.    Assuming *arguendo* that the act of detention itself was intended as a revocation of his prior release, Petitioner has received no process whatsoever: he has not been informed of the conditions of release that Respondents assert he is subject to, or the ways in which they claim he has violated them.

Filing 1 at 18 (¶ 72).

Corio-Sanchez alleges that his detention has injured him in at least two ways. Specifically, he alleges,

By re-detaining [him], Respondents have effectively shortened the amount of time he has to apply and be approved for relief [under the special protection of unaccompanied children (UACs) under the TVPRA] and, thereby, placed him into an accelerated timeline, prejudicing him in his removal case, without ever providing Petitioner with notice of any change in his status and an opportunity to be heard.

Filing 1 at 18 (¶ 73). He also alleges that he "was deprived of his asylum application interview that was scheduled while he was in ICE custody and the Respondent's [sic] failed to transport him to the interview." Filing 1 at 18 (¶ 74).

Corio-Sanchez then alleges the specific legal authority for his claim as follows:

Petitioner is a member of the class of noncitizens identified in *Sandhu [v. Mullin,* No. 7:26-CV-009, 2026 WL 1146643 (D. Neb. 2026)], having been placed into immigration detention, granted release from detention, and re-detained years later without any process. Like Sandhu, Petitioner has shown a liberty interest in his continued release, and "his re-detention—particularly without notice of the revocation and an opportunity to respond—fell short of the process he is due." 2026 WL 1146643, at 5.

Filing 1 at 18–19 (¶ 75). He alleges further,

There is no evidence that Petitioner's longstanding release from [sic] was properly revoked, and he "must be released and put in the same position he was in before his re-detention." *Id.*, citing *Singh [v. Mullin],* 2026 WL 1021846, at 4 [(N.D. Iowa Apr. 15, 2026)].

Filing 1 at 19 (¶ 76). Consequently, Corio-Sanchez concludes, "Petitioner is being held in violation of his right to due process and immediate release from detention is the only proper remedy." Filing 1 at 19 (¶ 77).

Corio-Sanchez prays for the following relief:

3

WHEREFORE, Petitioner prays that this Cout grant the following relief:

1)      Assume jurisdiction over this matter;

2)      Order that Petitioner not be transferred outside the District of Nebraska while this matter is pending;

3)      Declare that Petitioner's detention is unlawful;

4)      Issue a Writ of Habeas Corpus and order Respondents to immediately release Petitioner from custody; or,

5)      In the alternative, order Respondents to provide adequate due process or a meaningful bond hearing within 7 days; or,

6)      In the alternative, order Respondents to show cause why this Petition should not be granted within three days;

7)      Award reasonable attorneys' fees and costs for this action; and

8)      Any other and further relief that this Court deems just and proper.

Filing 1 at 19–20.

*2. The Habeas Proceedings*

On June 15, 2026, even though no summons had been issued and no proof of service on any Respondent had been filed so far, the Court entered an Order to Show Cause. Filing 3. In that Order to Show Cause, the Court *inter alia* set a deadline for Respondents to make a return not later than three business days after service of Corio-Sanchez's Petition with a copy of the Order to Show Cause and a deadline of three business days after the filing of Respondents' return for Corio-Sanchez to file any reply. Filing 3 at 4. The Court also indicated that, upon the filing of respondents' return and Corio-Sanchez's reply, the Court would promptly determine whether to set a hearing on this matter. Filing 3 at 4.

On June 23, 2026, the Federal Respondents filed their return, supported by an index, the Declaration of Deportation Officer Daniel Archer, and two exhibits. Filing 7. Corio-Sanchez then

filed a reply on June 25, 2026. Filing 12. On June 26, 2026, counsel appeared on behalf of the

State Respondent, Carolyn Sommer, the Acting Warden of the McCook Detention Center, and

filed the State Respondent's return. Filing 15; Filing 16. In her return, the State Respondent stated,

> From reading the Verified Petition for Writ of Habeas Corpus ("Petition") (Doc.
> No. 1), it is Warden's understanding that she is only made a party to this action
> because Petitioner Mateo Walter Corio-Sanchez ("Petitioner") is currently detained
> at the McCook ICE Detention Center in McCook, Nebraska, which is the subject
> of an Inter-Governmental Service Agreement ("IGSA") between Nebraska
> Department of Correctional Services, the U.S. Department of Homeland Security
> ("DHS") and the U.S. Immigration and Customs Enforcement ("ICE"). (Doc. No.
> 1). Accordingly, Warden does not take a position on the substantive issues raised
> in the Petition, nor does Warden take a position on whether Petitioner's writ should
> or should not be granted.

Filing 16 at 1–2. Because the physical custodian of Petitioner has been served and has responded,

the Court has subject-matter jurisdiction and may proceed with the case. *See Rumsfeld v. Padilla,*

542 U.S. 426, 434–35, 442 (2004).

After reviewing the parties' written submissions, the Court concludes that an evidentiary

hearing is not required because a conclusion can be reached on the legal issues presented based on

the undisputed facts. *See Ruiz v. Norris,* 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that

"an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the

petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'"

(quoting *Amos v. State,* 849 F.2d 1070, 1072 (8th Cir. 1988))).

### B. Factual Background

The factual background here is drawn primarily from Corio-Sanchez's Petition and

attached documents. It is then supplemented where appropriate from the documents attached to

the Federal Respondents' return.

*1.  Corio-Sanchez's Entry and Parole into the United States*

Corio-Sanchez, now twenty years old, is a citizen of Guatemala who has lived in the United States for more than five years. Filing 1 at 5 (¶ 18). He was a minor child when he entered the United States without inspection near El Paso, Texas, on May 8, 2021, and he was detained by Respondents the same day. Filing 1 at 2 (¶ 2) (citing Filing 1-1 (Record of Deportable/Inadmissible Alien, Form I-213, showing *inter alia* entry "WI-Without Inspection")), 6 (¶ 26). He was designated an unaccompanied child (UAC) and placed in the custody of the Office of Refugee Resettlement (ORR). Filing 1 at 2 (¶ 3) (citing Filing 1-2 (VERIFICATION OF RELEASE)). According to the declaration of a deportation officer assigned to the case, DHS records indicate that on May 8, 2021, Corio-Sanchez was "served with form 1-200, Warrant of Arrest, form 1-286, Notice of Custody Determination and form 1-862, Notice to Appear charging Petitioner with removability under Section 212(a)(6)(A)(i) of [the] Act," but "[r]ecord checks demonstrate that the Notice to Appear was never filed with the Immigration Court." Filing 9 at 3 (¶ 14).

Corio-Sanchez was initially detained at Fort Bliss military base in West Texas, but on June 9, 2021, he was released to his adult first cousin as his sponsor pursuant to 6 U.S.C. § 279. Filing 1 at 2 (¶ 3) (citing Filing 1-2 (VERIFICATION OF RELEASE)). Corio-Sanchez asserts that before his release to his cousin, ORR determined that he was not a security or flight risk. Filing 1 at 6–7 (¶ 27). He also alleges that ICE did not file a Notice to Appear (NTA) with the Immigration Court to place him in removal proceedings at that time. Filing 11 at 7 (¶ 28). Corio-Sanchez alleges that he lived with his cousin in Miami, Florida, for a year, then moved to Webster City, Iowa, where he resided from July 2022 until he was re-detained in January 2026. Filing 1 at 5 (¶ 18).

*2.  Corio-Sanchez's Re-Detention*

On January 27, 2026, Corio-Sanchez was arrested on a misdemeanor criminal charge, and Federal Respondents learned of his arrest on January 28, 2026. Filing 1 at 7 (¶ 29); Filing 9 at 4

6

(¶ 18) (stating the date of arrest).[1] "[A] detainer was placed on [Corio-Sanchez] and a Warrant of Arrest" was issued. Filing 1 at 7 (¶ 29) (citing Filing 1-1 at 2); Filing 9 at 4 (¶ 19) (confirming that ICE issued the I-247, Immigration Detainer-Notice of action, and the I-200, Warrant of Arrest). On January 28, 2026, Corio-Sanchez was "released without bond" from the Hamilton County Jail after an initial appearance on the state misdemeanor charge. Filing 1 at 7 (¶ 30) (citing Filing 1-5 (Initial Appearance Order)). However, on January 29, 2026, Respondents immediately took Corio-Sanchez into ICE custody allegedly "based upon a final order of removal," although Corio-Sanchez contends there was no such order. Filing 1 at 7 (¶ 31). He was transported to the ICE/ERO office in Des Moines, Iowa, for processing without notice or opportunity to be heard. Filing 1 at 2 (¶ 5). He was later transported to the McCook Detention Center in McCook, Nebraska, where he remains at this time. Filing 1 at 2 (¶ 6).

On January 29, 2026, the Department of Homeland Security (DHS) issued Corio-Sanchez a Notice to Appear (NTA), notifying him that he is "an alien present in the United States who has not been admitted or paroled." Filing 1-3 at 1; *see also* Filing 1 at 2–3 (¶ 6). The NTA alleges further,

1. You are not a citizen or national of the United States;

2. You are a native of GUATEMALA and a citizen of GUATEMALA;

3. You entered the United States at or near an unknown place on or about unknown date;

4. You were not then admitted or paroled after inspection by an Immigration Officer.

---

[1] The Initial Appearance Order filed January 28, 2026, following Corio-Sanchez's arrest indicates that he was charged with "operating while under the influence 1st offense." Filing 1-5 (reduced from all capitals). The deportation officer's declaration states, "On January 27, 2026, the Hamilton County Iowa Sheriff's Department arrested and charged Petitioner with operating while intoxicated, no drivers license, possession of alcohol by person 18/19/20 years old, failure to maintain control and failure to provide proof of financial liability. Those charges are currently pending with Hamilton County Court." Filing 9 at 4 (¶ 18).

5. You are an immigrant not in possession of a valid unexpired immigrant visa/reentry permit, border crossing sard, or other valid entry document required by the |Immigration and Nationality Act; and/or

6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

Filing 1-3 at 1, 4.

The NTA concludes as follows:

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:

212 (a) (6) (A) (i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

212 (a) (7) (A) (i) (I) of the Immigration and Nationality Act (Act), as amended, as an immigrant |who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required |by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

Filing 1-3 at 4.

*3. Immigration Proceedings*

On April 19, 2024, almost two years before Corio-Sanchez was re-detained, he filed form I-589, Application for Asylum and Withholding of Removal with the United States Citizenship and Immigration Services (USCIS). Filing 9 at 4 (¶ 17). On May 19, 2026, USCIS closed Corio-Sanchez's I-589 application for failure to comply with security check requirements and referred the application to an Immigration Judge (IJ). Filing 9 at 4 (¶ 21). On June 16, 2026, after proceedings in which Corio-Sanchez participated at least by filing a response on June 15, 2026, and during which he was represented by counsel, the IJ pretermitted Corio-Sanchez's 1-589 application, denied applications for asylum, withholding, and under the Convention Against

Torture, and ordered Corio-Sanchez to be deported to Guatemala. Filing 9 at 4 (¶ 22); *see also* Filing 9-2 at 1 (Order of Immigration Judge). The IJ reserved appeal for Corio-Sanchez and set a deadline of July 16, 2026, to file an appeal. Filing 9-2 at 7.

## II.  LEGAL ANALYSIS

### A.  Standards for § 2241 Habeas Relief

Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Corio-Sanchez. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))).

The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are set out in 28 U.S.C. § 2243, which among other things requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243. District Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

Corio-Sanchez asserts a single due process claim that his detention is in violation of the laws of the United States. He seeks to distinguish his case from many other recent habeas actions by aliens as follows:

32.     This case does not turn on how Federal Respondent's reinterpretation of how 8 U.S.C. §§ 1225(b) (I.N.A. § 235(b)) and 1226 (I.N.A. § 236) is applied to noncitizens. This is a case about whether the government may strip a person of liberty it previously granted without any individualized determination that detention is necessary. These actions are contrary to the established protections under the Due Process Clause of the Fifth Amendment.

Filing 1 at 8 (¶ 32). The Court rejected a similar claim in a prior habeas action bought by an alien who was paroled into the United States temporarily on humanitarian or public benefit grounds. *See Mamatkasym Uulu v. Mullins*, No. 4:26CV3142, 2026 WL 1463690, *3 (D. Neb. May 26, 2026).[2] Corio-Sanchez has not pointed to anything that convinces the Court that it should reach a different result in his case.

### B. Corio-Sanchez's Due Process Claim

#### 1. The Parties' Arguments

Corio-Sanchez argues that, notwithstanding the greater flexibility the government enjoys in immigration proceedings than in proceedings involving citizens, "the Due Process Clause applies to everyone in the United States, including noncitizens alleged to be present without admission and pending removal proceedings." Filing 1 at 13 (¶ 52). He then asserts that he is entitled to relief under the three-factor balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Filing 1 at 14 (¶ 54). Specifically, he argues that his liberty interest is at its highest while

---

[2] In *Uulu*, this Court addressed the petitioner's assertion that "'[t]his case is not about which detention statute applies'—that is, whether either 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a) applies" but was "instead 'about whether the government may strip a person of liberty it previously granted—after more than three years of compliance—without notice, without a hearing, without any finding of changed circumstances, and without any individualized determination that detention is necessary,' which he asserts is contrary to the Due Process Clause of the Fifth Amendment to the United States Constitution." 2026 WL 1463690, at *1.

10

being wrongfully detained; the risk of erroneous deprivation is extreme when no process was given to deny his liberty; and the government's interest does not justify detention without process. Filing 1 at 14 (¶¶ 55–57). In addition or in the alternative, he argues that *Sandhu v. Mullin*, No. 7:26-CV-5009, 2026 WL 1146643 (D. Neb. 2026), suggests that the status and circumstances should be "generalized" to the noncitizen's class. Filing 1 at 15 (¶ 60). Thus, he argues that his circumstances of initially being placed in immigration detention and then granted release by the government prior to the contested re-detention determine the due process protections to which he was entitled. Filing 1 at 15 (¶ 61). He argues further that membership in that class is the "crucial distinction" between a due process claim related to a subsequent re-detention as compared to a claim for a bond hearing as addressed in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Filing 1 at 15 (¶ 62). Specifically, he argues that as in *Sandhu* the liberty interest of conditional release of a noncitizen from immigration detention is properly compared to that of parole from criminal incarceration. Filing 1 at 16 (¶ 65). Thus, constitutionally sufficient due process in his circumstances "requires at a minimum, specific notice of the allegations of the terms violated and a meaningful opportunity to respond." Filing 1 at 16 (¶ 66).

Federal Respondents respond that Corio-Sanchez is still an "applicant for admission" who had never been admitted, so that he is properly detained under 8 U.S.C. § 1225 and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Filing 7 at 5–6. Federal Respondents argue that Corio-Sanchez's attempt to evade the impact of *Avila* on the ground that he was previously released to his cousin as a then-UAC should be rejected because *Avila* dictates a broad application of § 1225 that plainly includes Corio-Sanchez. Filing 7 at 6. Federal Respondents then rely on this Court's decision in *Uulu* as rejecting a petitioner's "'contention that he [was] no longer an "applicant for admission" within the meaning of § 1225(a) and not subject to mandatory detention under § 1225(b)(2)

because he was paroled into the United States by the government' because '[t]hat contention finds no support in the language of the statutes at issue as construed by the Eighth Circuit in *Avila*." Filing 7 at 8 (quoting *Uulu*, 2026 WL 1463690, at *7). Federal Respondents argue further that Corio-Sanchez's temporary detention does not offend due process. Filing 7 at 9. Federal Respondents argue that Congress made a legislative judgment that undocumented aliens should be detained during removal proceedings, which is the prerogative of the legislative branch. Filing 7 at 9. The Federal Respondents argue that *Demore v. Kim*, 538 U.S. 510 (2003), and *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), leave no room for additional constitutional protections to non-citizens who have experienced prior permission to be inside the United States, particularly where the latter case dealt with prior lawful permanent residents. Filing 7 at 10–11. Finally, they point out that Corio-Sanchez is no longer a minor who can avail himself of any UAC protections. Filing 7 at 13.

In reply, Corio-Sanchez argues that neither *Avila* nor a prior decision of the Fifth Circuit on which *Avila* in part relied, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), addressed UACs, so his claim remains viable. Filing 12 at 1. He then reiterates that both the *Mathews* factors and the *Sandhu* factors lead to the conclusion that his due process rights were violated. Filing 12 at 5–8.

### 2. Corio-Sanchez's Detention Does Not Violate Due Process

#### a. Corio-Sanchez Is Properly Detained under § 1225 and Has Been Ordered Removed

The Court concludes first that Corio-Sanchez is mistaken in his assertion that the statute under which he is detained is not the question in his case. Filing 1 at 8 (¶ 32). In *Avila*, the Eighth Circuit explained,

In defining [applicant for admission], § 1225(a)(1) reads as follows:

12

> An alien present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission.

*Avila*, 170 F.4th at 1133 (quoting § 1225(a)(1)). Corio-Sanchez arrived in the United States at a port of entry and was not admitted, so he plainly fell within the definition of an "applicant for admission" as interpreted by the Eighth Circuit. His parole as a UAC did not change his "applicant for admission" status, because parole under 8 U.S.C. § 1182(d)(5)(A), the parole statute at issue in *Uulu*'s case, is not an "admission," and Corio-Sanchez offers no argument why parole as a UAC should be any different. "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). No DHS or ICE official made any such determination in Corio-Sanchez's case.

Just as importantly, in connection with Corio-Sanchez's redetention, on January 29, 2026, DHS issued Corio-Sanchez a NTA notifying him that he is "an alien present in the United States who has not been admitted or paroled." Filing 1-3 at 1, 4; *see also* Filing 1 at 2–3 (¶ 6). The NTA expressly charged that Corio-Sanchez is removable from the United States. Filing 1-3 at 4. On June 16, 2026, an IJ pretermitted Corio-Sanchez's 1-589 application, denied applications for asylum, withholding, and under the Convention Against Torture, and ordered Corio-Sanchez to be deported to Guatemala. Filing 9 at 4 (¶ 22); *see also* Filing 9-2 (Order of Immigration Judge). Thus, Corio-Sanchez's redetention is for the purpose of removal.

      b.  The Due Process Clause Does Not Provide Corio-Sanchez with Relief

As was the case in *Uulu*, the Court does not find it necessary or appropriate to consider Corio-Sanchez's Due Process claim in light of either the *Mathews* three-factor test or the *Sandhu* approach. *See Uulu*, 2026 WL 1463690, at *11. For the reasons set out in the Court's decisions in

*Alberto Rodriguez v. Jeffreys*, No. 8:25CV714, 2025 WL 3754411, at *15–17 (D. Neb. Dec. 29, 2025), and *Uulu*, the Court denies Corio-Sanchez's claim of violation of his Fifth Amendment due process rights.

Central to the analysis in both of those prior cases is the fact that in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), the Eighth Circuit explained that "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'" *Banyee*, 115 F.4th at 931 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)). In both *Banyee* and *Demore*, the statute at issue was 8 U.S.C. § 1226(c), which—like § 1225(b) at issue in Corio-Sanchez's case—requires mandatory detention. *Id.* (citing *Demore*, 538 U.S. at 514). The Eighth Circuit explained,

> [In *Demore*, the Supreme Court] reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526, 123 S.Ct. 1708. The reason, according to the Court, was that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522, 123 S.Ct. 1708; *accord Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). In other words, the government has more flexibility when dealing with immigration. *See, e.g., United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (explaining that the "constitutional[ ] valid[ity]" of detention pending deportation means that the usual limits on *Terry* stops "do[ ] not apply to ... administrative arrest[s] based upon probable cause that an alien is deportable"); *see also Wong Wing v. United States*, 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (explaining that the power to deport "would be vain if those accused could not be held in custody pending [an] inquiry into their true character and while arrangements were being made for their deportation").

*Banyee*, 115 F.4th at 931.

The Eighth Circuit explained further,

> It is true, as Banyee emphasizes, that the Court has described detention pending deportation as "brief," "limited," and "short[ ]." *Demore*, 538 U.S. at 513, 523, 526, 528–29, 531, 123 S.Ct. 1708. But nothing suggests that length determines legality. To the contrary, what matters is that detention pending deportation "ha[s] a definite termination point"—deporting or releasing the alien—making it "materially different" from the "potentially permanent" confinement authorized by other statutes. *Id.* at 528–29, 123 S.Ct. 1708 (citation omitted); *see Zadvydas v. Davis*, 533 U.S. 678, 697, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (drawing the same definite-versus-indefinite distinction); *cf. Borrero v. Aljets*, 325 F.3d 1003, 1008

14

> (8th Cir. 2003) (holding that even indefinite detention can be constitutional for "alien[s] who [are] stopped at the border"). The *why*, in other words, is more important than *how long*. *See Zadvydas*, 533 U.S. at 693–94, 121 S.Ct. 2491 (noting that "the nature of th[e] protection" to which aliens are entitled "var[ies] depending upon *status and circumstance*" (emphasis added)).

*Banyee*, 115 F.4th at 932 (emphasis in the original).

> The Eighth Circuit then stated,

> These cases leave no room for a multi-factor "reasonableness" test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But *Zadvydas* and *Demore* have already done whatever balancing is necessary. *See, e.g., Zadvydas*, 533 U.S. at 682, 701, 121 S.Ct. 2491 (linking a "'reasonable time' limitation" to "the likelihood of removal in the reasonably foreseeable future"); *Demore*, 538 U.S. at 528, 123 S.Ct. 1708 (explaining that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"). Indeed, the lead dissent in *Demore* advocated for the type of "individual determination" Banyee now seeks, presumably under a *Mathews*-type inquiry. 538 U.S. at 549–58, 561 n.16, 123 S.Ct. 1708 (Souter, J., concurring in part and dissenting in part); *cf. Flores*, 507 U.S. at 314 n.9, 113 S.Ct. 1439 (rejecting *another* dissent's call for "fully individualized custody determinations"). The majority opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still "*pending*." *Demore*, 538 U.S. at 527, 123 S.Ct. 1708 (majority opinion).

*Banyee*, 115 F.4th at 933 (emphasis in the original).

For Corio-Sanchez, like Uulu and the petitioner in *Banyee*, the deportation proceedings are still pending. *Id.* Because Corio-Sanchez's detention is pursuant to § 1225(b), there is no authorization for a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). Like Uulu, Corio-Sanchez contends only that he is being held without an individualized detention hearing, but § 1225(b) requires his detention. "Congress may make rules as to aliens that would be unacceptable if applied to citizens," and "the government has more flexibility when dealing with immigration." *Banyee*, 115 F.4th at 931 (internal quotation marks and citations omitted).

Thus, the Court rejects Corio-Sanchez's attempt to liken his parole status to parole from criminal incarceration and invoke similar due process requirements. Filing 1 at 16 (¶ 65). There would seem to this Court to be a much greater similarity between an alien paroled as a UAC on entry then later detained and an alien granted permanent resident status then detained for deportation, like the petitioner in *Banyee*. *See Banyee*, 115 F.4th at 930. However, the alien's permanent resident status in *Banyee* did not entitle him to application of a due process balancing test, and this Court finds neither does Corio-Sanchez's re-detention after parole as a UAC. *Id*. at 931–33,

Furthermore, the Supreme Court has already performed the due process balancing test for immigration cases and found that detention is reasonable in the context of determination of whether an alien should be removed. *Banyee*, 115 F.4th at 933 ("These cases leave no room for a multi-factor 'reasonableness' test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. But *Zadvydas* and *Demore* have already done whatever balancing is necessary." (internal quotation marks and citations omitted)). Thus, Corio-Sanchez's due process rights have not been violated because there is "a bright-line rule" applicable in his circumstances: "the government can detain an alien for as long as deportation proceedings are still '*pending*.'" *Id*. (quoting *Demore*, 538 U.S. at 527 (majority opinion), with emphasis in the original).

Thus, like Uulu, Corio-Sanchez has failed to carry his burden to show that he is entitled to any relief on his due process claim in his Petition. *See Maldonado*, 2025 WL 2374411, at *4 (concluding that a petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)).

### III. CONCLUSION

Upon the foregoing,

16

IT IS ORDERED that Petitioner Mateo Walter Corio-Sanchez's Petition for Writ of Habeas Corpus, Filing 1, is denied.

Dated this 30th day of July, 2026.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

17